No. 26-10244

---

In the United States Court of Appeals for the Fifth Circuit

---

Defense Distributed,

Intervenor Plaintiff — Appellant,

v.

Todd Wallace Blanche, Acting U.S. Attorney General,
in her official capacity as Attorney General of the United States;
United States Department of Justice; Daniel P. Driscoll, in his official capacity as
Acting Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives;
Bureau of Alcohol, Tobacco, Firearms, and Explosives,

Defendants — Appellees.

---

Appeal from the United States District Court for the
Northern District of Texas; No. 4:22-cv-00691-O

---

**Brief of Appellant Defense Distributed**

---

Chad Flores
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, Texas 77002
(713) 893-9440

Counsel for Defense Distributed

**Certificate of Interested Persons**

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Parties | Counsel |
|---|---|
| Jennifer VanDerStok | Cooper & Kirk PLLC<br>David H. Thompson |
| Michael G. Andren | Peter A. Patterson<br>William V. Bergstrom |
| Tactical Machining, L.L.C., a limited liability company | Cooper & Scully, P.C.<br>Richard Brent Cooper<br>Benjamin David Passey* |
| | Mountain States Legal Foundation<br>Brian A. Abbas<br>Erin M. Erhardt |
| Firearms Policy Coalition, Incorporated, a nonprofit corporation | FPC Action Foundation<br>Cody J. Wisniewski |
| | New Civil Liberties Alliance<br>Kaitlyn D. Schiraldi |
| | Brian D. Poe, Attorney At Law PLLC<br>Brian Daniel Poe |
| Blackhawk Manufacturing Group, Incorporated, doing business as 80 Percent Arms | Ashcroft Law Firm LLC<br>Joseph Christopher Amrhein, Jr.<br>Michael J. Sullivan<br>Nathan P. Brennan |

| | |
|---|---|
| Defense Distributed | Flores Law PLLC<br>Chad Flores |
| Second Amendment Foundation, Incorporated | Beck Redden LLP<br>Nicholas Bruno<br><br>Latham & Watkins LLP<br>Zachary Nelson |
| Not An L.L.C., doing business as JSD Supply | Evans, Daniel, Moore, Evans, Biggs & Smid<br>Matthew Joseph Smid |
| Polymer80, Incorporated | Brewer & Pritchard, P.C.<br>J. Mark Brewer*<br><br>Bradley Arant Boult Cummings, LLP<br>Dennis Daniels<br>James W. Porter*<br>Marc A. Nardone* |
| Merrick Garland, in his official capacity as Attorney General of the United States<br><br>United States Department of Justice<br><br>Steven Dettelbach, in his official capacity as Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives<br><br>Bureau of Alcohol, Tobacco, Firearms and Explosives | United States Department of Justice<br>Sean Janda<br>Daniel M. Riess<br>Jeremy S.B. Newman<br>Martin M. Tomlinson<br>Taisa M. Goodnature |

/s/ Chad Flores
Chad Flores

## Statement Regarding Oral Argument

This litigation challenges President Biden's so-called "ghost gun" regulation, Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. 24,652 (Apr. 26, 2022). The challenger here is Defense Distributed, the industry-leading company whose APA action pleaded for relief from the Rule via six distinct claims. One of six claims was resolved by this Court in *VanDerStok v. Garland*, 86 F.4th 179 (5th Cir. 2023), and the Supreme Court in *Bondi v. VanDerStok*, 604 U.S. 458 (2025). The resolved claim was about the Rule's statutory contradiction of the Gun Control Act. At issue are Defense Distributed's totally unresolved APA claims about the Rule's constitutional contradictions of the Due Process Clause and Second Amendment. They arise here via preliminary injunction refusal.

The Court should hold oral argument for the same reason it did before: this case presents important, recurring questions about ATF's authority to impose criminal consequences through an indeterminate rule. The statutory issue has been resolved, but the constitutional questions remain untouched, consequential, and urgent. The government's position warrants full scrutiny, and Defense Distributed should not lose meaningful interim protection because the district court declined to engage a ripe injunction motion.

# Table of Contents

Certificate of Interested Persons ................................................................................ii

Statement Regarding Oral Argument.............................................................................iv

Table of Authorities ...................................................................................................vii

Jurisdictional Statement................................................................................................ 1

Issues Presented..............................................................................................................2

Statement of the Case .....................................................................................................3

Summary of the Argument...............................................................................................6

Argument .........................................................................................................................8

I. Defense Distributed is likely to succeed on its constitutional claims.......................9

    A. *Bondi v. VanDerStok* does not control. ............................................................ 10

    B. The Rule violates the Due Process Clause. ....................................................11

        1. No one can say what the Rule covers. ............................................. 12

        2. A voluntary classification process does not cure the violation......... 16

        3. The challenge succeeds facially and as applied............................... 18

    C. The Rule violates the Second Amendment. ....................................................19

        1. The Constitution recognizes no "modest impingement" exception. ........................................................................................20

        2. The Rule regulates conduct the Second Amendment's text protects. ......................................................................................... 21

        3. ATF identifies no relevantly similar historical analog. .................... 23

        4. The American tradition affirmatively protects self-manufacture. ................................................................................. 25

    D. The statute's constitutionality is for another day....................................... 27

II.    The remaining preliminary-injunction factors compel relief. ............................... 27

    A.    Defense Distributed faces irreparable harm. ................................................ 27

    B.    The balance of equities and the public interest favor relief. ........................ 29

III.    The Court should render the injunction Defense Distributed is entitled to. ......... 31

    A.    The district court has no reason to refuse to rule. .......................................31

    B.    This Court should render the judgment the district court should have entered. ...................................................................................................... 35

Certificate of Compliance ............................................................................................. 39

# Table of Authorities

## Cases

*Act Now to Stop War & End Racism Coalition v. District of Columbia,*
846 F.3d 391 (D.C. Cir. 2017) ................................................................ 25, 26

*Amazon.com Services LLC v. NLRB,*
151 F.4th 221 (5th Cir. 2025) ...................................................................... 7

*Andrews v. State,*
50 Tenn. 165 (1871) ................................................................................ 29

*Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A.,*
875 F.2d 1174 (5th Cir. 1989) ............................................................... 35, 40

*Bondi v. VanDerStok,*
604 U.S. 458 (2025) ......................................................................... *passim*

*BST Holdings, L.L.C. v. OSHA,*
17 F.4th 604 (5th Cir. 2021) ................................................................ 35, 40

*Carson v. American Brands, Inc.,*
450 U.S. 79 (1981) .................................................................................. 39

*Clarke v. CFTC,*
74 F.4th 627 (5th Cir. 2023) ........................................................... 7, 39, 43

*Dana's R.R. Supply v. Att'y Gen., Fla.,*
807 F.3d 1235 (11th Cir. 2015) ................................................................ 26

*District of Columbia v. Heller,*
554 U.S. 570 (2008) ................................................................................ 28

*Elrod v. Burns,*
427 U.S. 347 (1976) ................................................................................ 35

*Ezell v. City of Chicago,*
651 F.3d 684 (7th Cir. 2011) ........................................29

*Gazzola v. Hochul,*
88 F.4th 186 (2d Cir. 2023) ........................................30

*Gordon v. Holder,*
721 F.3d 638 (D.C. Cir. 2013)........................................38

*Hanson v. District of Columbia,*
120 F.4th 223 (D.C. Cir. 2024) ........................................30

*Illinois Ass'n of Firearms Retailers v. City of Chicago,*
961 F. Supp. 2d 928 (N.D. Ill. 2014) ........................................29

*In re Fort Worth Chamber of Commerce,*
100 F.4th 528 (5th Cir. 2024)........................................ *passim*

*Johnson v. United States,*
576 U.S. 591 (2015) ........................................ *passim*

*Kennedy v. Bremerton School District,*
597 U.S. 507 (2022)........................................19, 20

*League of Women Voters of United States v. Newby,*
838 F.3d 1 (D.C. Cir. 2016) ........................................37

*Luis v. United States,*
578 U.S. 5 (2016) ........................................29

*Mock v. Garland,*
75 F.4th 563 (5th Cir. 2023) ........................................29

*National Association for Gun Rights v. Polis,*
173 F.4th 1317 (10th Cir. 2026) ........................................17

*New York State Rifle & Pistol Ass'n v. Bruen,*
597 U.S. 1 (2022) ........................................ *passim*

*O'Donnell v. Goodhart*,
900 F.3d 220 (5th Cir. 2018) ................................................................ 37, 38

*Polymer80, Inc. v. Garland*,
No. 4:23-CV-00029-O, 2023 WL 3605430 (N.D. Tex. Mar. 19, 2023)........ 36

*Sessions v. Dimaya*,
584 U.S. 148 (2018) ........................................................................ 20, 21

*Texas v. Biden*,
10 F.4th 538 (5th Cir. 2021) ...................................................................36

*Tripoli Rocketry Ass'n, Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
437 F.3d 75 (D.C. Cir. 2006) ...................................................................18

*United States v. Abbott*,
110 F.4th 700 (5th Cir. 2024) (en banc) ........................................................14

*United States v. Campbell*,
427 F.2d 892 (5th Cir. 1970) ...................................................................21

*United States v. Clinical Leasing Service, Inc.*,
925 F.2d 120 (5th Cir. 1991) ...................................................................24

*United States v. Evans*,
333 U.S. 483 (1948) ...................................................................21

*United States v. Lim*,
444 F.3d 910 (7th Cir. 2006) ...................................................................18

*VanDerStok v. Garland*,
86 F.4th 179 (5th Cir. 2023) ...................................................................8

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
455 U.S. 489 (1982)...................................................................24

*Wages & White Lion Investments, L.L.C. v. FDA,*
       16 F.4th 1130 (5th Cir. 2021) ................................................................ 35, 37

**Constitutional Provisions**

U.S. Const. amend. II ................................................................................26

**Statutes**

5 U.S.C. § 706 ................................................................................ 11, 15, 25

28 U.S.C. § 1292 ............................................................................ *passim*

28 U.S.C. § 2106 ................................................................................42

**Administrative Authorities**

27 C.F.R. § 478.11 ................................................................................

27 C.F.R. § 478.12 ................................................................................ 19

27 C.F.R. § 479.102 ................................................................................

Definition of "Frame or Receiver" and Identification of Firearms,
       87 Fed. Reg. 24,652 (Apr. 26, 2022) ................................................ *passim*

**Secondary Authorities**

M.L. Brown, Firearms in Colonial America: The Impact on History and
Technology 1492–1792 (1980) ................................................ 32, 33
       33

John G.W. Dillin, The Kentucky Rifle (1975) ........................................33

Joseph G.S. Greenlee, The American Tradition of Self-Made Arms,
54 St. Mary's L.J. 35 (2023) ................................................32

Letter from Secretary of State Thomas Jefferson to British Ambassador to the United States George Hammond (May 15, 1793), in 7 The Writings of Thomas Jefferson 325 (Paul Leicester Ford ed., 1904) ........................................................ 33

Charles Winthrop Sawyer, Firearms in American History (1910) ........................ 32

Francis Newton Thorpe, The Federal and State Constitutions, Colonial Charters, and Other Organic Laws of the States, Territories, and Colonies Now or Heretofore Forming the United States of America (1909) ........................................

James B. Whisker, The Gunsmith's Trade (1992) ................................................ 33

## Jurisdictional Statement

Defense Distributed appeals from the district court's constructive denial of its motion for a preliminary injunction. The motion was filed on June 6, 2025. ROA.5402 (Doc. 293). It was fully briefed as of July 11, 2025. ROA.5512 (Doc. 299). Defense Distributed supplemented the record with evidence of escalating irreparable harm on January 26, 2026. ROA.6171 (Doc. 301). Yet the district court refused to take action on the motion. So Defense Distributed filed its Notice of Appeal on March 12, 2026. ROA.6181 (Doc. 302). Where, as here, continued delay effectively denies relief, a district court's failure to rule on a ripe motion for a preliminary injunction constitutes a constructive denial appealable under § 1292(a)(1). *See Amazon.com Servs. LLC v. NLRB*, 151 F.4th 221, 228 (5th Cir. 2025); *In re Fort Worth Chamber of Commerce*, 100 F.4th 528, 533–35 (5th Cir. 2024); *Clarke v. Commodity Futures Trading Comm'n*, 74 F.4th 627 (5th Cir. 2023).

## Issues Presented

This appeal concerns unresolved constitutional challenges to President Biden's so-called "ghost gun" regulation, Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. 24,652 (Apr. 26, 2022). Defense Distributed pleaded six APA claims against the Rule. Only Count One—the statutory claim that the Rule contradicted the Gun Control Act—has been resolved, first by this Court in *VanDerStok v. Garland*, 86 F.4th 179 (5th Cir. 2023), and then by the Supreme Court in *Bondi v. VanDerStok*, 604 U.S. 458 (2025). Still unresolved are Defense Distributed's constitutional APA claims, presented here through the district court's refusal of preliminary relief. The issue is:

1. Whether Defense Distributed is entitled to a preliminary injunction barring enforcement of the Rule because (i) the Rule is void for vagueness under the Due Process Clause, and (ii) the Rule violates the Second Amendment.

## Statement of the Case

This case returns to the Court after a remand that answered one question and left the rest open. Defense Distributed challenges the 2022 ATF rule redefining "firearm" in 27 C.F.R. §§ 478.11 and 478.12 to reach unfinished frames, receivers, and parts kits. *See* 87 Fed. Reg. 24,652 (Apr. 26, 2022). Its complaint pleads six counts seeking to have the Rule declared unlawful and set aside, including the Fifth Amendment vagueness and Second Amendment claims at issue here. ROA.2350 (Doc. 143).

In the first round, the district court preliminarily enjoined enforcement of the Rule against Defense Distributed, ROA.3987 (Doc. 188), this Court agreed, ROA.5340 (Doc. 264), and this Court later held the Rule unlawful, *VanDerStok v. Garland,* 86 F.4th 179 (5th Cir. 2023). The Supreme Court reversed. *Bondi v. VanDerStok*, 604 U.S. 458 (2025). But it decided only the statutory question — that the Gun Control Act permits the Rule — while declining to "untangle exactly how far" the Rule reaches and reserving the "more difficult questions" it raises. *Id.* at 869, 872. Defense Distributed's constitutional counts were never adjudicated.

On remand, Defense Distributed renewed its request for preliminary relief. On June 6, 2025, it moved to enjoin enforcement of the Rule against six of its products: three 80% frames previously before the courts — a Polymer80 frame and

two M1911 frames — and three products brought to market after *VanDerStok* — the G80 Build Kit, the G80 Unfinished Receiver, and the G80 Grip Module. ROA.5480 (Doc. 293); ROA.5484 (Doc. 294). The motion rested on the two constitutional theories the Supreme Court had left open. The government opposed, ROA.5525 (Doc. 297); Defense Distributed replied on July 11, 2025, ROA.5590 (Doc. 299); and Defense Distributed supplemented the record with further evidence of irreparable harm on January 26, 2026, ROA.6171 (Doc. 301).

The district court never entered a written denial. But it denied the motion in the only way that mattered for preliminary relief: it left a ripe injunction motion unresolved while the challenged Rule continued to operate and the alleged irreparable harms continued to accrue. By March 12, 2026, the motion had been fully briefed for roughly eight months. At that point, further silence no longer preserved judicial options; it functionally refused interim protection. Defense Distributed therefore appealed the constructive denial under 28 U.S.C. § 1292(a)(1). ROA.6181 (Doc. 302).

The district court's later actions confirm constructive denial rather than cure it. After Defense Distributed appealed, the court denied an injunction pending appeal, ROA.6209 (Doc. 309), and placed the remaining claims on a summary-judgment schedule, ROA.6226 (Doc. 314). But it still did not decide the preliminary-

injunction motion. By moving the case to final-merits proceedings while leaving interim relief unresolved, the district court effectively chose merits deferral over preliminary protection. The constructive denial therefore remains the decision, and the ongoing summary-judgment schedule does not erase this Court's jurisdiction.

## Summary of the Argument

Defense Distributed is entitled to the preliminary injunction the district court refused to enter. This appeal does not reargue *Bondi v. VanDerStok*, 604 U.S. 458 (2025). It concerns claims *VanDerStok* did not decide: that the Rule is "contrary to constitutional right" because it violates the Due Process Clause and the Second Amendment. 5 U.S.C. § 706(2)(B). To save the Rule as a statutory matter, ATF had to defend a regulation reaching objects that are not yet firearms *because they can become firearms through manufacture*. That move creates the very constitutional problem now before the Court. If ATF regulates the means of making Arms, it must satisfy the Second Amendment. And if ATF imposes criminal consequences along a manufacturing continuum, it must identify a clear line. This Rule never does.

The Rule is void for vagueness. *See Johnson v. United States*, 576 U.S. 591, 597, 602 (2015); Sessions v. Dimaya, 584 U.S. 148, 156–57, 163–64 (2018). It turns criminal exposure on amorphous standards—"readily," "clearly identifiable," and an open-ended associated-materials inquiry—that draw no objective line between lawful products and regulated "firearms." ATF's voluntary classification process does not cure that defect. It is optional, nonbinding beyond the exact submission, and incapable of constraining ATF's discretion. The Rule thus gives neither fair notice to the public nor meaningful limits on enforcement officials.

The Rule also violates the Second Amendment. *See N.Y. State Rifle & Pistol Ass'n v. Bruen*, <u>597 U.S. 1, 24</u> (2022). ATF now concedes that the Rule "impinge[s] Second Amendment rights." So under *Bruen*, the government must prove that its regulation fits the Nation's historical tradition before the conduct may be placed outside the Amendment's "unqualified command." *Id.* ATF cannot do that because *Bruen* requires direct analogy to relevantly similar historical regulations—not abstraction, not interest balancing, and not agency intuition. American tradition confirms that citizens have long been free to make and maintain their own Arms for lawful use. ATF identifies no relevantly similar founding-era tradition of criminalizing firearm parts, unfinished frames or receivers, or private arms-making.

Past the merits, all factors that warranted an injunction before do so now too. Defense Distributed's motion was fully briefed for months, supported by escalating irreparable-harm evidence, and left unresolved while the Rule continued to inflict constitutional and commercial injury. Concerns of judicial economy and a desire to avoid piecemeal litigation could not justify withholding relief. Defense Distributed has not litigated piecemeal; it pressed its constitutional claims before the last appeal, opposed post-remand delay, and moved promptly for interim protection when the case to the district court. Because the decisive questions are legal and the record is complete, this Court should render the injunction Defense Distributed requested.

## Argument

Defense Distributed appeals from the district court's refusal of its motion for a preliminary injunction. Review is for abuse of discretion with *de novo* review of the legal issues. *E.g.*, *United States v. Abbott*, 110 F.4th 700, 708 (5th Cir. 2024) (en banc)

The district court's refusal to grant preliminary relief should be reversed. Defense Distributed satisfied each preliminary-injunction factor. It showed a substantial likelihood of success on unresolved constitutional claims. It showed irreparable constitutional and business injury. It showed that the balance of harms and the public interest favor a narrow injunction preserving Defense Distributed's ability to market six identified products while this case proceeds. The Rule continues to impose criminal consequences through a vague, indeterminate, and historically unsupported expansion of the federal "firearm" definition. The preliminary injunction should have issued.

Yet the district court gave Defense Distributed no relief, constructively denying the motion by refusing to issue any express ruling. That error requires reversal. The motion should have been ruled upon on the merits and granted. This Court should therefore render the decision that the district court should have—a preliminary injunction for Defense Distributed on the requested terms.

**I. Defense Distributed is likely to succeed on its constitutional claims.**

Defense Distributed's claims proceed through the APA. The Rule must be set aside because it is "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B). The constitutional defects supply the predicate; the APA supplies the cause of action and relief. So this brief uses "constitutional claims" as shorthand for APA claims resting on constitutional violations.

Two constitutional claims carry Defense Distributed's motion: the Count Six Due Process Clause claim and the Count Five Second Amendment claim. Each, standing alone, supplies a likelihood of success; together they are overwhelming. They are two of the six counts in Defense Distributed's complaint, ROA.2369–2376 (Doc. 143 at 20–27), and the rest were expressly reserved below for later resolution on summary judgment, ROA.4883 (Doc. 231 at 2 n.1).

No court has decided either claim. They come to this Court on a clean slate. The Supreme Court approached them only to reject constitutional avoidance, and it did so in a single paragraph resting entirely on statutory grounds. *Bondi v. VanDerStok*, 604 U.S. 458 (2025). The opinion never once uses the words "Second Amendment" or "Due Process Clause." The constitutional merits are open, and Defense Distributed wins them.

### A. *Bondi v. VanDerStok* does not control.

*VanDerStok* resolves none of the questions presented here. It held only that "some" regulated items fall within the GCA, declined to "untangle exactly how far" the Rule reaches, and reserved "more difficult questions" for future cases. *VanDerStok*, 604 U.S. at 869. This case presents those questions.

Statutory authorization is all that *VanDerStok*'s treatment of the **Polymer80 frame** establishes — not constitutional permission. The Court sustained the Rule's coverage of that product and used it to exemplify what the GCA lets ATF define as a "firearm." *VanDerStok*, 604 U.S. at 475 (treating an unfinished Polymer80 frame as the kind of "instrument[] of combat" Congress meant the statute to reach). But the Due Process Clause and the Second Amendment still forbid ATF from criminalizing the sale of that item, statutory authorization notwithstanding.

*VanDerStok* says nothing at all about the **1911 and G80 items**, reserving them among the "more difficult questions" it refused to answer. *Id.* at 869–70. ATF's insistence that these items are covered "firearms" is wrong, but for present purposes that is a Count One statutory dispute. The correct view is that the GCA does not reach them, because they lack the trait *VanDerStok* treated as decisive — that "an ordinary person, using ordinary tools, can finish the frame in minutes." *Id.* at 874. Finishing these items demands more on every axis: a difference of kind, not degree.

Defense Distributed in fact engineered the G80 platform after *VanDerStok* to ensure compliance. But even assuming the statute reaches the 1911 and G80 items, the Constitution still forbids ATF from using the Rule to criminalize their sale.

That reading of *VanDerStok* is not novel. The Tenth Circuit has likewise recognized that *VanDerStok* upheld the ATF Rule only against a facial statutory challenge under the GCA and "did not address the constitutionality of the ATF's regulation of firearm parts kits." *Nat'l Ass'n for Gun Rights v. Polis*, 173 F.4th 1317, 1325 n.6 (10th Cir. 2026). More importantly, *VanDerStok*'s reasoning confirms why the constitutional claims matter. The government defended the Rule as reaching unfinished frames, receivers, and kits because they can become firearms through manufacture. That is not a constitutional answer. It is the constitutional problem. If ATF regulates the means of making Arms, it must satisfy the Second Amendment. And if ATF imposes criminal consequences at some point in a manufacturing continuum, due process requires a clear line the public and the agency can identify in advance.

**B.     The Rule violates the Due Process Clause.**

The Rule is void for vagueness. The Fifth Amendment's vagueness doctrine condemns criminal laws that deny fair notice of what is forbidden or invite arbitrary enforcement. *See, e.g.*, *Johnson v. United States*, 576 U.S. 591 (2015). Assuming the

Rule's "firearm" definition correctly construes the GCA, its enforcement scheme fails on both counts. This is Count Six, never adjudicated, ROA.2374–2375 (Doc. 143 at 25–26); ROA.4883 (Doc. 231 at 2 n.1), and now fully meritorious.

### 1. No one can say what the Rule covers.

The Rule's "readily" provision is its central vagueness flaw, and no one can say where its line falls. The provision sweeps in any "partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit, that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver." 27 C.F.R. § 478.12(c). Nothing in the Rule tells a citizen, and no reasonable person can infer, when a piece of metal or plastic crosses the "readily" barrier into a regulated frame or receiver — not even with the gloss of § 478.11. Vacuous metrics like that are invalid. *See Tripoli Rocketry, Inc. v. ATF*, 437 F.3d 75, 81 (D.C. Cir. 2006) (rejecting agency line-drawing untethered to ascertainable criteria). Objective, specified measurements would be needed to cure the defect, *see United States v. Lim*, 444 F.3d 910, 916 (7th Cir. 2006), and the Rule has none.

This is the same vice *Johnson* condemned. The "readily" test ties criminality to the features of an imagined "ordinary case" of self-manufacture — the time, tools, and effort a hypothetical builder would need — rather than to real-world facts

or fixed statutory elements. *Johnson*, <u>576 U.S. at 597</u>. A construct no one can actually apply is too vague to support a crime.

"Clearly identifiable" is no more determinate than "readily." The Rule's second definitional provision treats "a forging, casting, printing, extrusion, unmachined body, or similar article" as a frame or receiver depending on whether it has "reached a stage of manufacture where it is clearly identifiable as an unfinished component part of a weapon." <u>27 C.F.R. § 478.12(c)</u>. That phrase fixes no threshold a citizen can locate. Defense Distributed's standing to challenge it is plain: its predecessor parts fall within the provision's reach, or at least arguably do, which is all a concrete, particularized stake requires.

The third provision invites the arbitrary enforcement the doctrine independently forbids. It lets the Director, in classifying an item, "consider any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials" sold or made available with it. <u>27 C.F.R. § 478.12(c)</u>. The Rule never identifies which of these materials matter, much less how ATF will weigh them to reach the decisive determination. Piling more unbounded considerations onto an already standardless definition widens the discretion; it does not narrow it. More elaborate tests are not clearer tests — often the reverse. *See, e.g.*, *Kennedy v.*

*Bremerton Sch. Dist.*, <u>597 U.S. 507, 534</u> (2022) (abandoning the unworkable *Lemon* apparatus).

Stacking the Rule's "kitchen-sink" factors only deepens the violation. The problem is not just that the Rule lists jigs, tools, and instructions. It is that the Rule gives ATF no rule for using them. ATF may consider jigs in the "readily" analysis, but it may also effectively choose not to. That discretion is the constitutional defect. A standardless option to consider decisive facts is not a standard.

Crimes cannot rest on the government's imagination. *Johnson* invalidated the residual clause precisely because it "tie[d] the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements." *Johnson*, <u>576 U.S. at 597</u>. The Rule does the same thing in administrative dress, pegging the definition of every "firearm" offense to a bureaucrat's mental image of when an object becomes a "true" firearm. "It is one thing to apply an imprecise . . . standard to real-world facts; it is quite another to apply it to a judge-imagined abstraction." *Id.* at 603–04. ATF's imagined abstraction is no better.

Nor is it any answer that some applications are easy: the doctrine "squarely contradict[s] the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp." *Id.* at 602; *accord Sessions v. Dimaya*, <u>138 S. Ct. 1204, 1214</u> n.3 (2018). Each uncertainty may be

"tolerable in isolation, but their sum makes a task . . . which at best could be only guesswork." *Id.* at 603 (quoting *United States v. Evans*, <u>333 U.S. 483, 495</u> (1948)). The result is "more unpredictability and arbitrariness than the Due Process Clause tolerates." *Sessions*, <u>138 S. Ct. at 1216</u>.

Judge Oldham analyzed this very Rule and reached the same conclusion, and his analysis should be adopted. *VanDerStok v. Garland*, <u>86 F.4th 179, 209</u> (5th Cir. 2023) (Oldham, J., concurring), *rev'd and remanded sub nom. Bondi v. VanDerStok*, <u>604 U.S. 458</u> (2025). The Fifth Amendment's bar on "arbitrary enforcement" matters as much as its guarantee of notice, he explained; it is no defense for ATF to promise it will tell people what they may do, because "[t]he law exists to tell both the people and government officials what they can do," and the Rule's "nonexclusive eight-factor balancing test provides no guidance to anyone and hence is void for vagueness." *Id.*

That analysis remains largely unrebutted. The Government's authorities do not displace it: *United States v. Campbell*, <u>427 F.2d 892</u> (5th Cir. 1970), did not address the question presented here, and the remaining out-of-circuit decisions are the same "mishmash of GCA-NFA precedents" Judge Oldham rejected. *VanDerStok*, <u>86 F.4th at 200</u>–09 (Oldham, J., concurring).

ATF's own conduct proves the vagueness. It deems the Rule to cover 80% pistol frames but not 80% rifle lowers, ROA.5562 (Doc. 298 at 5), and cannot explain the line. No one can. That incoherence is the void-for-vagueness problem made manifest, forcing Defense Distributed to guess at compliance under threat of criminal liability.

**2. A voluntary classification process does not cure the violation.**

ATF's after-the-fact classification process saves nothing, for multiple reasons. Each confirms that the process is no substitute for a rule that gives notice and binds the agency in advance.

First, the process answers only notice. It reaches, at most, one half of the vagueness doctrine: fair notice to the public. It does nothing for the doctrine's separate command that the regulator itself be bound by ascertainable standards, and that defect alone establishes the violation and warrants relief. *VanDerStok*, 86 F.4th at 209 (Oldham, J., concurring). ATF has no answer to this point.

Second, the process is optional on both sides. It cannot cure even the notice defect because regulated parties need not submit requests and ATF need not answer them. The Rule says so: "There is no statutory requirement for a person to submit such requests and likewise no requirement for ATF to act upon any such requests."

87 Fed. Reg. 24,652, 24,710. The Director "may" issue a determination—not "shall." 27 C.F.R. § 479.102(c).

Third, the process is item-specific to the point of uselessness. Any determination binds no one beyond the exact item submitted. It also evaporates upon any change in "configuration," "accessories," "attachments," or "marketing materials." *Id.* That is not advance notice of a legal standard; it is a one-off agency reaction to one frozen submission.

Fourth, the process is internally incoherent. ATF classifies like items unlike, treating 80% pistol frames as covered while treating 80% rifle lowers as uncovered. ROA.5562 (Doc. 298 at 5). That contradiction confirms the absence of governing standards rather than curing it.

ATF's treatment of jigs proves the same point. The Rule authorizes ATF, when classifying an item, to consider associated "templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials." 27 C.F.R. § 478.12(c). Yet ATF now appears to treat that authority as optional discretion it may invoke, ignore, or bracket depending on the desired classification. That does not cure vagueness. It confirms it. A rule that lets the agency consider jigs when they help coverage, but disregard them when they complicate coverage, supplies no standard at all.

Fifth, the Rule is the wrong kind of enactment to receive vagueness leeway. That leeway applies to enactments aimed at the economic interests of businesses. *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982); *see also United States v. Clinical Leasing Serv.*, Inc., 925 F.2d 120, 122 (5th Cir. 1991). This Rule reaches fundamental liberties, not just commercial interests, and all people, not just businesses.

Sixth, a classification process is never a standalone cure. *Clinical Leasing* treats administrative clarification as one factor, not a constitutional solvent. 925 F.2d at 122. Even crediting the process as one point for ATF, two weightier factors cut the other way: the Rule is criminal, not civil, and it threatens constitutional rights. *Hoffman Estates*, 455 U.S. at 498–99.

The process therefore neither makes these self-inflicted nor renders them insufficiently imminent. It does not defer the harm. The indeterminacy *is* the harm.

### 3. The challenge succeeds facially and as applied.

The Rule is vague both as applied and on its face, so the Court need not sort the claim into either box. Both forms of relief were pleaded and pressed, ROA.2374–2376 (Doc. 143 at 25–27); ROA.5480 (Doc. 293); ROA.5484 (Doc. 294), and both are meritorious. The same defects that invalidate the Rule as applied make it invalid in all applications.

*Salerno*'s facial rubric does not control this claim. *VanDerStok* applied the government's facial-statutory framing only because the arguing plaintiffs did not dispute it; so the Court took that framework "as given" and expressly declined to decide whether the rubric would govern other claims or other briefing. *VanDerStok*, 604 U.S. at 469-71. Still, pre-enforcement facial vagueness challenges are permitted both to vindicate the Due Process concern with "arbitrary and discriminatory enforcement," *Act Now to Stop War & End Racism Coal. v. District of Columbia*, 846 F.3d 391, 410 (D.C. Cir. 2017), and where a rule chills constitutionally protected conduct, *Dana's R.R. Supply v. Att'y Gen., Fla.*, 807 F.3d 1235, 1241 (11th Cir. 2015). Defense Distributed's claim implicates both: ATF's contradictory treatment of materially identical items embodies the arbitrary-enforcement concern, and ATF has now conceded that the challenged provisions "impinge Second Amendment rights." ROA.5542 (Doc. 297 at 18).

C.     **The Rule violates the Second Amendment.**

The Rule independently fails the Second Amendment. It abridges the right to acquire and make Arms — conduct the Constitution presumptively protects and that ATF cannot justify by historical tradition. 5 U.S.C. § 706(2)(B). This is Count Five, never adjudicated, ROA.2374 (Doc. 143 at 25); ROA.4883 (Doc. 231 at 2 n.1), and now fully meritorious.

19

### 1. The Constitution recognizes no "modest impingement" exception.

ATF has conceded the threshold question. For the first time, it admits that "the provisions of the Rule challenged here only modestly impinge Second Amendment rights." ROA.5542 (Doc. 297 at 18). That concession is fatal, because a right that "shall not be infringed" cannot be impinged at all — modestly or otherwise. U.S. Const. amend. II. ATF reached this position only after years of insisting the Rule implicated no Second Amendment interest, ROA.3017 (Doc. 159 at 22) — a reversal it adopted just long enough to dodge a constitutional-avoidance loss in the Supreme Court. With the concession in hand, the only question left is historical justification, and there is none.

The Second Amendment supplies an unqualified command. *Bruen* supplies the mandatory method for enforcing it. Once the government impinges conduct covered by the right, modern regulation must be judged by direct analogy to historical tradition—not by judicial interest balancing, regulatory intuition, or agency say-so. ATF therefore cannot defend a concededly rights-impinging Rule by calling the impingement "modest." The Constitution does not grade infringements by size. It demands history.

*Bruen* forecloses ATF's "modest impingement" defense. Once the Second Amendment's text covers the conduct, the Constitution presumptively protects it, and the government must prove that its regulation fits the Nation's historical tradition. *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 24 (2022). Only then may a court place the conduct outside the Second Amendment's "unqualified command." *Id.* The "unqualified command" leaves no room for ATF's sliding scale. A law either fits the historical tradition or it fails, and the Rule clearly fails.

2. **The Rule regulates conduct the Second Amendment's text protects.**

*Bruen* governs, and the Rule cannot survive it. Where "the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct," and the government must then "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2129–30. The Rule's "firearm" definition flunks that test.

The text reaches what the Rule forbids. "Arms" covers "all instruments that constitute bearable arms," including those "not in existence at the time of the founding," *District of Columbia v. Heller*, 554 U.S. 570, 582 (2008), and the Rule regulates such Arms by recalibrating the GCA's "firearm" definition. The conduct the Rule reaches also falls within "keep and bear," which entails the right to make

and acquire Arms. Constitutional rights "implicitly protect those closely related acts necessary to their exercise." *Luis v. United States*, 578 U.S. 5, 26–27 (2016) (Thomas, J., concurring in the judgment). The right to possess arms thus "implies a corresponding right to acquire" them and the means to keep them serviceable. *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011). The right to keep arms "necessarily involves the right to purchase them, to keep them in a state of efficiency for use, and to . . . keep them in repair." *Andrews v. State*, 50 Tenn. 165, 178 (1871). Protected conduct "likely includes making common, safety-improving modifications to otherwise lawfully bearable arms." *Mock v. Garland*, 75 F.4th 563, 588 (5th Cir. 2023) (Willett, J., concurring). And the right to keep and bear arms "must also include the right to acquire a firearm." *Ill. Ass'n of Firearms Retailers v. City of Chicago*, 961 F. Supp. 2d 928, 930 (N.D. Ill. 2014). A law criminalizing personal gunsmithing parts and kits implicates the Second Amendment for the same reason a law criminalizing printing presses would implicate the First.

The United States now agrees — indeed, concedes the point. It accepts that the Second Amendment protects not only expressly covered conduct but "those closely related acts necessary to [its] exercise" — the "important corollar[ies]" of the core right — including rights to "purchase" Arms, to keep them "in repair" and "in a state of efficiency for use," and to "purchase," "possess," and "provide"

ammunition and attachments. ROA.5603 (Doc. 299, App. A) (Br. for the United States as Amicus Curiae, *Barnett v. Raoul*, Nos. 24-3060 et al. (7th Cir. June 13, 2025)); ROA.5637 (Doc. 299, App. B) (Gov't Supp. Resp., *United States v. Peterson*, No. 24-30043 (5th Cir. May 23, 2025)). On that paradigm, the Government has conceded the very right at issue — a right to self-manufacture Arms reaching the "possession," "purchase," and "provision" of parts and kits at the component level. And component-level regulation indisputably implicates the Second Amendment. *See Hanson v. District of Columbia*, 120 F.4th 223, 232 (D.C. Cir. 2024) (regulation at the "component level" triggers Second Amendment scrutiny). ATF's contrary position in this case is one more arbitrary reversal and should be rejected. Defense Distributed may press the full range of these rights — both its customers' interests, *see, e.g.*, *Gazzola v. Hochul*, 88 F.4th 186, 194 (2d Cir. 2023), and its own right to "provide" the corollaries "necessary to [the right's] exercise."

### 3. ATF identifies no relevantly similar historical analog.

Historical analogy is not a vibes test. *Bruen* requires direct analogy to relevantly similar historical regulations, judged by why and how they burdened the right. That command matters here because ATF regulates the means of making Arms, not merely commercial sale after manufacture. So ATF must identify a

historical tradition of burdening private arms-making, unfinished components, or the parts used to make functional Arms.

The burden is the Government's, and it cannot carry it. *Bruen*, 142 S. Ct. at 2129–30. ATF offers no historical tradition of regulations like this one. The founders never tried to keep people from having guns by outlawing the parts used to make them.

ATF's appeal to a "tradition of government regulation to ensure only law-abiding citizens acquire firearms," ROA.5543 (Doc. 297 at 19), misses the mark: even if accurate, that account concerns *public gun selling*, a realm the American tradition has always kept distinct from *private self-manufacture*. The distinction predates the founding and remains material.

ATF's two proffered analogs — colonial barrel-proving laws and gunpowder-handling laws — are inapposite on each *Bruen* metric. For both the barrel-proofing laws and gunpowder-storage rules regulated different things, at different stages, for different reasons. They share no relevantly similar "why."

The Rule advances criminal enforcement by controlling who may bear Arms. *See* ROA.5535 (Doc. 297 at 11). Yet barrel-proving laws protected gun users from accidental hazards and gunpowder laws protected the public from accidental hazards in storage and transport. ROA.5543–5545 (Doc. 297 at 19–21). Laws preventing

accidents do not justify laws preventing manufacture. They share no relevantly similar "how" either: they operated on finished products entering commerce, not on the act of production; they did not reach parts or ingredients that might or might not someday become an Arm; and they did not apply regardless of whether the item would ever enter the public domain. *Id.* And both barrel-proving laws and many of the gunpowder laws postdate 1791, which drains their evidentiary value as to what the Second Amendment had already secured. *Bruen*, 142 S. Ct. at 2136.

**4.    The American tradition affirmatively protects self-manufacture.**

The Rule does not merely lack supporting analogs; it defies an established tradition pointing the other way. Self-manufacture of firearms in America was common and, until recently, entirely unregulated. *See* Joseph G.S. Greenlee, *The American Tradition of Self-Made Arms*, 54 St. Mary's L.J. 35, 66 (2023). Colonial gunsmiths made and repaired arms in shops where "one man with or without an apprentice did every part of the work," Charles Winthrop Sawyer, *Firearms in American History* 145 (1910), and colonists held an express right to import both whole firearms and the parts to build their own, Francis Newton Thorpe ed., *The Federal and State Constitutions* 3787–88 (1909). During the Revolution, when Britain tried to cut off American arms, Americans built their own to survive, M.L. Brown, *Firearms in Colonial America* 127 (1980), and the colonies solicited private and non-industry

makers alike to fill wartime shortages. Thomas Jefferson described the settled understanding in 1793: "Our citizens have always been free to make, vend, and export arms." Letter from Thomas Jefferson to George Hammond (May 15, 1793), in 7 *The Writings of Thomas Jefferson* 325–26 (Paul Ford ed., 1904).

What ATF calls a modern category of "precursor parts" is nothing new. Early riflemakers routinely "purchased [barrel blanks] in bulk from some factory," then fitted them to hand-made stocks with factory or imported locks. John G.W. Dillin, *The Kentucky Rifle* 96 (1975). The "traditional" method of domestic production from before 1791 into the late nineteenth century was, in fact, to build Arms from factory-made parts that arrived imported, unfinished, and unmarked — the very practice from which interchangeable-parts "armory practice" later grew.

None of those ingredient parts was ever treated as a gun, and the founders never let anyone criminalize their distribution. The tradition was so settled that "[g]unsmiths considered it to be their right to make guns without regulation or interference," James B. Whisker, *The Gunsmith's Trade* 90 (1992), and the few restrictions that exist are recent — the earliest state laws reaching personal manufacture appearing only in 2016, Greenlee, *supra*, at 42. There is thus no American tradition of regulating firearm parts or self-manufacture, let alone criminalizing them.

That history decides this case. *Bruen* does not permit ATF to defend a modern gun law by abstracting upward until any old firearms regulation will do. The analogy must be direct enough to show that the challenged burden belongs to the same historical tradition. No such tradition exists here. The American tradition left citizens free to make Arms from acquired parts; ATF's Rule criminalizes that tradition at the component level. *Bruen* therefore forecloses the Rule.

### D.     The statute's constitutionality is for another day.

The statute's validity is not presented and need not be decided. Since Defense Distributed seeks only a judgment about ATF's enforcement of the Rule, ROA.2376 (Doc. 143 at 27), all Defense Distributed must establish—and all this Court must confront—is the Rule's unconstitutionality. If that holding has implications for the statute's validity, so be it—in the next case. *VanDerStok* held only that the GCA permits this Rule, not that it requires it. 604 U.S. 458. The question now is whether ATF may enforce this Rule consistently with the Constitution. It may not.

## II.     The remaining preliminary-injunction factors compel relief.

### A.     Defense Distributed faces irreparable harm.

Two independent categories of irreparable harm warrant an injunction. **First,** ATF's continued enforcement inflicts ongoing constitutional injury. Even a brief loss of constitutional freedoms is irreparable injury. *See, e.g.*, *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021) (quoting *Elrod v. Burns*, 427 U.S. 347,

27

373 (1976)). Every day ATF enforces the Rule against Defense Distributed, its Due Process and Second Amendment freedoms are irretrievably lost.

**Second**, ATF's enforcement inflicts unrecoverable economic injury — the same injury that supported the district court's original injunction. Those losses are irreparable on two independent grounds: they are nonrecoverable, *see, e.g.*, *Wages & White Lion Invs., L.L.C. v. FDA*, 16 F.4th 1130, 1142 (5th Cir. 2021), and they are "so great as to threaten the existence of the movant's business," *Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A.*, 875 F.2d 1174, 1179 (5th Cir. 1989). Three of the six products were before the court last time — the Polymer80 frame and the two M1911 frames — so the original analysis applies unchanged. ROA.3991–3993 (Doc. 188 at 5–7); ROA.5507–5511 (Doc. 294-1 (Ex. A) at 2–6). The three newer G80 products satisfy the test for the same reasons. ROA.5514 (Doc. 294-2 (Wilson Decl.) ¶¶ 7–8). Barred from selling these products free of the Rule's threat of criminality, Defense Distributed loses revenue and margins critical to its survival and can never recover the lost sales or the substantial cost of deciphering the Rule. *Id.* It is again "likely to suffer irreparable harm — through unrecoverable lost revenues and, potentially, eventual total dissolution of its business — if the Court does not provide injunctive relief while litigation is ongoing." ROA.3991 (Doc. 188 at 5).

The harm is ATF-inflicted, not self-inflicted. ATF's reliance on *Texas v. Biden*, 10 F.4th 538 (5th Cir. 2021), ROA.5528 (Doc. 297 at 4), fails for the reason the district court already gave in a materially identical posture: Defense Distributed "faces irreparable injury whatever course it takes — suffer economic injury or comply with a regulation it alleges the Government has no authority to enforce." *Polymer80, Inc. v. Garland*, No. 4:23-CV-00029-O, 2023 WL 3605430, at *10 (N.D. Tex. Mar. 19, 2023). The post-remand record makes that conclusion stronger, not weaker. The government has refused to disclaim enforcement against Defense Distributed's products, and that enforcement posture has produced concrete third-party consequences: loss of ordinary banking access and loss of commercially viable insurance. Those harms are not speculative. They are standard market responses to unresolved criminal exposure created by the Rule. ATF's optional classification process — discretionary, item-specific, and nonbinding beyond the exact submission — does not defer or attenuate that injury. It confirms why the injury exists.

## B.     The balance of equities and the public interest favor relief.

The balance of harms tips decisively to Defense Distributed. It faces unrecoverable losses, lost market share, and potential dissolution, ROA.3991–3993 (Doc. 188 at 5–7); ROA.5507–5511 (Doc. 294-1 (Ex. A) at 2–6); ROA.5514 (Doc. 294-2 (Wilson Decl.) ¶¶ 7–8), while the Government faces only minimal burden

from a narrow injunction pausing enforcement against six specific products — the more so as the Attorney General's ongoing review signals that enforcement priorities may already be shifting. ROA.5470 (Doc. 290).

A preliminary injunction also preserves the status quo — a "prime directive" of this analysis, *see, e.g.*, *Wages & White Lion*, 16 F.4th at 1143 — by restoring the "firearm" definition that governed for decades. The public interest points the same way. The interest lies "in having governmental agencies abide by the federal laws that govern their existence and operations," and "there is generally no public interest in the perpetuation of unlawful agency action." *Id.* Defense Distributed's strong likelihood of success is itself "a strong indicator that a preliminary injunction would serve the public interest." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). Constitutional rights settle the question: preserving them always serves the public interest, *see, e.g.*, *O'Donnell v. Goodhart*, 900 F.3d 220, 232 (5th Cir. 2018), while "enforcement of an unconstitutional law is always contrary to the public interest," *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013).

ATF's own position confirms the equities. On the merits, it insists it cannot classify the G80 items without physical inspection; on the equities, it assumes those very items are covered and warns that an injunction would unravel the entire regulatory scheme. ATF cannot have it both ways. If the items' status is genuinely

unknown, their coverage cannot be essential to the Rule. That contradiction is itself the arbitrary enforcement the Court should enjoin.

## III. The Court should render the injunction Defense Distributed is entitled to.

The district court has not denied Defense Distributed's motion in words. It has done so in effect, by refusing to rule on a fully briefed motion for more than eight months while Defense Distributed's constitutional freedoms are extinguished day by day. That effective denial is what brings the case here, and it should end here. The Court need not send the motion back to be ignored again; it should render the injunction Defense Distributed has earned.

### A. The district court has no reason to refuse to rule.

A preliminary-injunction motion can be denied without a written order. What matters under § 1292(a)(1) is practical effect, not caption. A district court constructively denies preliminary relief when it leaves a ripe injunction motion unresolved long enough that delay itself threatens irreparable harm or deprives the requested relief of practical value. *In re Fort Worth Chamber of Com.*, 100 F.4th 528, 533–35 (5th Cir. 2024). That rule follows from the remedy's nature: preliminary relief "must be granted promptly to be effective," so a court that "simply sit[s] on a preliminary-injunction motion for too long can effectively deny it." *Id.* at 533–34. This Court has therefore exercised jurisdiction over effective denials measured in months, not years. *See Clarke v. CFTC*, 74 F.4th 627, 635 (5th Cir. 2023) (reviewing

action with the "practical effect" of denying an injunction where delay threatened irreparable harm) (quoting *Carson v. Am. Brands, Inc.*, <u>450 U.S. 79, 83</u> (1981)).

This record satisfies that standard. Defense Distributed moved for a preliminary injunction on June 6, 2025. <u>ROA.5480</u> (Doc. 293); <u>ROA.5484</u> (Doc. 294). The motion was fully briefed on July 11, 2025. <u>ROA.5590</u> (Doc. 299). On January 26, 2026, Defense Distributed supplemented the record with evidence that the harms had escalated from threatened to concrete. <u>ROA.6171</u> (Doc. 301). The district court still did not rule. By the time Defense Distributed noticed this appeal in March 2026, the motion had been ripe for roughly eight months and the Rule remained enforceable against the very products for which interim relief was sought. That is constructive denial. It exceeds delays this Court has already treated as sufficient for § 1292(a)(1) review. *See Fort Worth Chamber*, <u>100 F.4th at 534</u>.

The urgency is real. *Fort Worth Chamber* makes clear that a movant cannot create appellate jurisdiction merely by demanding speed; there must be a legitimate basis for urgent interim relief. <u>100 F.4th at 534</u>. Defense Distributed has one. Each day of enforcement allegedly deprives it of Due Process and Second Amendment freedoms, and even temporary loss of constitutional rights is irreparable. *BST Holdings*, <u>17 F.4th at 618</u> (quoting Elrod, <u>427 U.S. at 373</u>). Each day also imposes unrecoverable business injury and threatens Defense Distributed's ability to remain

a going concern. *Atwood Turnkey Drilling*, 875 F.2d at 1179. This is exactly the setting *Fort Worth Chamber* describes: delay threatens "the opportunity for effective permanent relief" because the interim harm cannot be undone later. 100 F.4th at 534.

No case-management or real-world reason justifies treating this as anything other than denial. The motion was fully briefed by July 2025 and presented the same preliminary-injunction factors the district court had already applied in Defense Distributed's favor, with likelihood of success now resting on constitutional claims VanDerStok left unresolved. ROA.3987 (Doc. 188). The Rule has not been rescinded, replaced, or superseded. The government has floated possible future agency action and shifted positions about whether the current frame-and-receiver definition will remain, but speculation about rulemaking does not protect Defense Distributed now.

The Rule remains operative, the government has refused to disclaim enforcement, and the district court still has not decided the preliminary-injunction motion. Instead, the court denied an injunction pending appeal within eleven days, ROA.6186 (Doc. 305); ROA.6209 (Doc. 309), and placed the remaining claims on a summary-judgment schedule, ROA.6226 (Doc. 314). That later merits track confirms denial rather than curing it. It makes preliminary protection depend on an

33

uncertain merits timeline—when that process will end, whether it will resolve every issue, whether post-judgment motions will follow, and whether another appeal will be necessary. Defense Distributed has waited too long already. Section 1292(a)(1) exists to prevent precisely that kind of lost interim relief.

Nor can concerns about piecemeal litigation (cited by the order denying the stay pending appeal, ROA.6212 (Doc. 309 at 3)) justify the refusal. First, that's because preliminary relief turns on the four injunction factors, not a district court's preference to fold urgent interim relief into final merits proceedings

Second, the premise is incorrect. Defense Distributed has not litigated piecemeal. It has pressed every claim in the ordinary course and at speed. Before the last Fifth Circuit appeal, Defense Distributed asked both the district court and this Court to decide its constitutional APA claims, including its Second Amendment and Due Process Clause claims. ROA.2346–2350; ROA.3113–3117; No. 23-10718, Doc. 122 at 19–31. The fact that the statutory claim was resolved first does not convert Defense Distributed's continued pursuit of the unresolved constitutional claims into fragmentation. After remand, Defense Distributed kept pressing. When the government asked the district court to stay the entire case pending the Attorney General's review, Defense Distributed opposed the stay and moved for a preliminary injunction the same day. ROA.5476 (Doc. 292); ROA.5480 (Doc. 293).

That is not fragmentation. It is diligence in seeking the only relief capable of preventing ongoing constitutional and business injury while the merits proceed.

**B.     This Court should render the judgment the district court should have entered.**

Because the questions that decide this motion are questions of law, this Court should not remand them to be reconsidered — it should resolve them and direct entry of the injunction. The likelihood-of-success inquiry turns entirely on two legal questions, reviewed de novo: whether the Rule is void for vagueness and whether it violates the Second Amendment. Part I answers them. Once answered, they leave nothing for the district court's discretion to resolve.

The equitable factors are not open either. The district court already found that Defense Distributed faces irreparable harm and that the balance of equities and the public interest favor an injunction as to three of the six products now at issue, ROA.3991–3996 (Doc. 188 at 5–10), and this Court left that relief undisturbed, ROA.5340 (Doc. 264). As Part II shows, that same analysis applies with equal force — indeed *a fortiori* — to the three materially identical newer products. The discretionary findings have therefore been made. There is no fact to develop and no judgment to exercise on remand.

Remand would defeat this appeal. Constructive-denial jurisdiction exists because delay can destroy preliminary relief before review arrives. Sending the

motion back would preserve the same delay that created jurisdiction. *Clarke* instead resolved the injunction factors on appeal from an effective denial. 74 F.4th 627. The same course is warranted here: the controlling issues are legal, the record is complete, and the district court already made the key equitable findings when it first enjoined the Rule. ROA.3987. Under 28 U.S.C. § 2106, this Court should direct entry of the requested injunction.

A contrary rule would make § 1292(a)(1) depend on form over function. A district court could avoid review simply by declining to enter an order, even while the passage of time denies the only relief capable of preventing irreparable injury. *Fort Worth Chamber* rejects that approach. The question is whether the district court's action or inaction has the practical effect of refusing preliminary relief. Here it did. Defense Distributed asked for interim protection while its constitutional claims were adjudicated; the district court gave none, and the Rule remained enforceable. That is denial for purposes of § 1292(a)(1).

Rendering relief would not unduly wrest the case from the district court. It would restore the function of preliminary relief while leaving the merits where they belong. The requested injunction is narrow, product-specific, and temporary. It would preserve Defense Distributed's constitutional position while the district court adjudicates the remaining APA claims. That is not appellate overmanagement. It is

the ordinary corrective function of § 1292(a)(1) when delay has already denied the

only relief capable of preventing irreparable harm.

## Conclusion

The Court should reverse and render the decision that should have been rendered below: a preliminary injunction lasting until the action's conclusion that enjoins the Defendants from enforcing the challenged redefinition of "firearm" in 27 C.F.R. §§ 478.11 and 27 C.F.R. §§ 478.12, *see* Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. 24,652 (Apr. 26, 2022), against Defense Distributed vis-à-vis the following items:

1. The Polymer80 80% Frame as sold by Defense Distributed on ghostgunner.net before the Rule took effect.
2. The M1911 80% Frame:45ACP as sold by Defense Distributed on ghostgunner.net before the Rule took effect.
3. The M1911 80% Frame:9mm/10mm/.38 Super/.40 S&W as sold by Defense Distributed on ghostgunner.net before the Rule took effect.
4. The G80 Build Kit as sold by Defense Distributed on G80.com.
5. The G80 Unfinished Receiver as sold by Defense Distributed on G80.com.
6. The G80 Grip Module as sold by Defense Distributed on G80.com.

Respectfully submitted,

/s/ Chad Flores
Chad Flores
chad@chadflores.law
Texas Bar No. 24059759
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, Texas 77002
(713) 893-9440

Counsel for Defense Distributed

**Certificate of Compliance**

This filing complies with the type-volume limitations of the Federal Rules of Appellate Procedure because it contains no more than 7,808 not-exempted words.

This filing complies with the typeface and typestyle requirements of Federal Rule of Appellate Procedure 32 and Fifth Circuit Rule 32 because it has been prepared in a proportionally spaced typeface in 14-point font using Microsoft Word for Mac Version 16.107.

/s/ Chad Flores
Chad Flores